## COUNTY OF HOUSTON v. EDWARD BURNS.[1]

June 26, 1914.

Nos. 18,675—(165).

**Boundary — estoppel.**

1. Shortly after acquiring a 40-acre tract for a poor farm, the plaintiff's board of county commissioners caused the county surveyor to survey the same, and the board agreed with an adjoining owner to build a partition or division fence on the line so surveyed, which fence has been so maintained on such line by both owners for upwards of 10 years. It is *held* that the owners are now concluded by the boundary so established and maintained.

**County — powers — partition fences.**

2. County commissioners, having the power to acquire land for a certain purpose, have also the right to ascertain and agree with adjoining owners as to boundaries and for the erection and maintenance of division or partition fences.

---

[1] Reported in 148 N. W. 115.

Action in ejectment in the district court for Houston county to recover a strip of land about one rod in width on the south boundary of a 40-acre tract. The case was tried before Kingsley, J., who at the close of the testimony directed the jury to return a verdict in favor of defendant. From the judgment entered pursuant to the verdict, plaintiff appealed. Affirmed.

*W. A. Deters,* County Attorney, for appellant.

*George W. Bunge,* for respondent.

HOLT, J.

In May, 1902, the plaintiff, the county of Houston, bought 40 acres of land from one McCarthy for a poor farm. The deed described the land conveyed thus: "The southeast quarter of the northwest quarter [of] section 23, township 102 north of range 6 west." The defendant, and his father before him, owned and occupied the 40 immediately south of the land plaintiff bought. The complaint alleges plaintiff and defendant to be the respective owners of the two 40-acre tracts, describing them by government subdivision, but alleges that the boundary line between the same was established and recognized by the owners according to a fence continuously maintained for 40 years prior to 1902, when defendant moved this fence without plaintiff's consent about one rod further north, and since said time has unlawfully withheld possession of the land between the old boundary line and the place to which the fence was moved. The answer admits the ownership of the respective forties as stated in the complaint, and alleges that in 1903, when plaintiff was the owner of said southeast quarter of the northwest quarter and defendant of the northeast quarter of the southwest quarter in said section, some question arose as to the true division line between the two tracts, and that plaintiff then engaged the county surveyor to survey the line. That this was done, and upon the line so established the parties hereto erected the fence in said year and have ever since maintained it thereon. On the trial the survey and location of the boundary between the forties, the participation by both plaintiff and defendant in the erection in 1903 of this fence on the surveyed line, and its maintenance as a boundary fence ever since, were established by undisputed

testimony, and the learned trial court, being of the opinion that this was conclusive against plaintiff, on motion instructed a verdict for defendant. Plaintiff appeals from the judgment.

If we assume that plaintiff's remote grantor, one Weida, acquired title to the strip now claimed by adverse possession, and we also assume that the title so acquired became vested in plaintiff, although not described in its deed nor in the deed to its grantor McCarthy, we nevertheless consider defendant entitled to judgment. Were plaintiff a private person, the survey and location of this boundary line, its acceptance and recognition by the respective owners as the line separating their lands, and the joint maintenance of a division fence thereon for almost 10 years would, undoubtedly, as a matter of law, establish such line as the true boundary and preclude either owner from asserting another. Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Benz v. City of St. Paul, 89 Minn. 31, 93 N. W. 1038; Nadeau v. Johnson, 125 Minn. 365, 147 N. W. 241. But plaintiff contends that it cannot be bound or estopped like an individual, that the consent of the board of county commissioners to the survey and construction of the division fence upon the line surveyed amounted to a surrender or giving away of property belonging to the county; and that the board has no power thus to dispose of the county's property without consideration. In the authorized purchase of land, in making agreements with adjoining landowners as to the true boundaries of such land, and in the construction of division fences, the county is acting in the same capacity as a private owner of land and its acts must carry the same consequences. Under section 1956, G. S. 1894, in force when this land was bought, the county commissioners had the authority to buy land for a poor farm and equip it with necessary improvements, of course, including fences. It cannot be contended seriously that the county commissioners, having the power to buy land, have not also the power to ascertain the true boundary thereof and agree with adjacent proprietors as to where the true line runs, and the manner in which a division or boundary fence should be built and maintained. There can be no illegality of contract, or *ultra vires* here involved. The mere fact that plaintiff had no paper title to any part of the claimed strip, but its only claim of

title must needs rest on the uncertainty of being able to establish the adverse possession of a remote grantor thereto, is a sufficient and valid reason for agreeing on a boundary line.

The judgment must be affirmed.