919 P.2d 329

**IDAHO HOME HEALTH, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**BEAR LAKE COUNTY and Bear Lake Memorial Hospital and Nursing Home, Defendants–Respondents.**

No. 21969.

Supreme Court of Idaho, Boise, April 1996 Term.

June 19, 1996.

Lyon & Lyon, Pocatello, for appellant. Kenneth E. Lyon, III argued.

Steven K. Tolman (argued) Twin Falls, and Roger Le Roy Jones, Montpelier, for respondents.

JOHNSON, Justice.

This is a local government case. The primary issue presented is whether counties have the authority to operate home health agencies. We conclude that the legislature intended that counties be able to offer home health services as evidenced by the language of the home health statutes. I.C. §§ 39–2401 to –2411 (1993). We also conclude that the

county budget laws require the county to publish the county hospital's salary expenses and non-property tax revenues in the county budget. I.C. §§ 31–1601 to –1613 (1993) (amended 1995).

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1992 the legislature enacted a mandatory licensing procedure for home health agencies, which are entities that provide home-based medical and social services. I.C. §§ 39–2401 to –2411 (1993). The next year Bear Lake County's county hospital (the hospital), applied for and received a license to operate a home health agency from the department of health and welfare (IDHW). It is one of ten to fifteen counties or county hospitals in the state to which IDHW has issued a home health license.

Idaho Home Health, Inc. (IHH) also operates a licensed home health agency in Bear Lake County. IHH sued Bear Lake County (the county) and the hospital, seeking a declaratory judgment that there is no statutory authority for counties or county hospitals to operate home health agencies. It also sought a declaration that the county and the hospital "have been providing home health services ... in violation of county budget law." Specifically, IHH challenged the line-item entry for the hospital in the county budget because it did not include the hospital's salary expenses or its non-property tax revenues. Idaho Code § 31–1604 (1993) (amended in 1995) requires that county budgets include the salary expenses and non-property tax revenues for each county department.

On cross-motions for summary judgment the trial court ruled for the county and the hospital on both issues. IHH appealed.

## II.

### COUNTIES AND COUNTY HOSPITALS MAY OFFER HOME HEALTH SERVICES.

IHH asserts that there is no statutory authority for home health agencies operated by counties or county hospitals. We disagree.

Boards of county commissioners have "only such powers as are expressly or impliedly conferred upon it by statute." *Prothero v. Board of Twin Falls County Comm'rs,* 22 Idaho 598, 602, 127 P. 175, 177 (1912). Therefore, there must be a statutory basis for the county's and hospital's entry into the home health care field. We find this basis in the home health statutes in which the legislature repeatedly indicates that counties and county hospitals may receive home health licenses.

The legislature refers throughout the home health statutes to "public agenc[ies] or organization[s]" and "governmental units" as potential recipients of home health licenses. For example, in the definition section "business entity" is defined as a "public or private organization...." I.C. § 39–2402(2). Idaho Code § 39–2403 makes a home health license mandatory for any "public agency or organization" operating a home health agency. The legislature dictated that a home health license "shall be issued only for the premises and persons or *governmental units* named in the application...." I.C. § 39–2404(2) (emphasis added). Similarly, in order to enforce the chapter's requirements, IDHW may seek an injunction "against any person or *governmental unit.*" I.C. § 39–2408 (emphasis added).

The home health statutes do not define "public agencies or organizations" or "governmental unit," but we conclude that the legislature must have intended that these terms be given some meaning. The phrase "public agencies and organizations" does not necessarily include counties. It could refer to organizations like health districts, for instance. Nevertheless, the plain and obvious meaning of the phrase "governmental units" suggests that the legislature contemplated home health agencies run by counties or municipalities. The use of the broad phrases "public agencies and organizations" and "governmental units," coupled with the lack of any legislative intent to exclude counties from eligibility for a license, shows the legislature intended that counties or county hospi-

tals could offer home health services if they satisfy the substantive requirements. *See State v. Matteson,* 123 Idaho 622, 625, 851 P.2d 336, 339 (1993) (" 'When a statute's language is broad enough to include a particular subject matter, an intent to exclude it from the statute's operation must be specifically expressed.' " (quoting *State v. Michael,* 111 Idaho 930, 932, 729 P.2d 405, 407 (1986))).

## III.

## THE COUNTY MUST PUBLISH THE HOSPITAL'S NON–PROPERTY TAX REVENUES AND SALARY EXPENSES IN THE COUNTY BUDGET PURSUANT TO THE COUNTY BUDGET LAWS.

■ IHH asserts that the line-item entry for the hospital in the county budget does not comply with the county budget laws because it did not include the hospital's total non-property tax revenues and salary expenses. We agree.

The 1994–95 county budget published by the county's board of commissioners does not include an entry for the hospital's salary expenses or the total amount of the hospital's non-property tax revenues. The hospital's entry appears to include only the money that passes through the county treasury, a small percentage of its overall expenses and revenues.

We first note that the hospital is not exempt from the requirements of the county budget laws as the county and hospital contend. Idaho Code § 31–3613 (1993) (amended in 1995) provides that

[t]he county hospital board shall prepare and submit to the board of county commissioners each year a budget for the operation of the hospital property at the time and in the form as provided by law for the preparation and submission of budgets by other county departments. The board of county commissioners shall thereafter approve, or amend or modify such budget as it deems proper, and ... shall include the same in the county budget.

Therefore, the hospital's entry in the county budget must comply with the county budget laws. This leads us to examine what kind of entry the county budget laws require.

Nothing in I.C. § 31–3613 or the county budget laws suggests that the hospital's entry in the county budget must only include the money that passes through the county treasury. Idaho Code § 31–1603 (1993) (amended in 1995), concerning the contents of the budget submitted by the county budget officer to the board of county commissioners, requires the inclusion of "[r]evenues from sources other than taxation, giving each fund, office, department, service, agency or institution separately." It continues, requiring an entry for the "proposed expenditures for each office ... for 'Salaries and wages,' and for 'Other expenses'...." Idaho Code § 31–1604 requires that the proposed budget published in the newspaper each year include these same categories.

The hospital has some elements of financial and accounting autonomy because they can set their own fiscal year and because money received by the hospital only passes through the hospital treasury, thereby avoiding the warrant procedure associated with the county treasury. This does not eliminate, however, the requirement contained in I.C. § 31–3613 that the board of county commissioners approve the hospital's entire budget, not just the budget for the county money, and include these amounts in the prescribed categories in the county budget. For the board of county commissioners to approve the budget, the full amount of non-property tax revenues and salary expenses need to be included as required by I.C. § 31–1604. As a county institution, not simply a hospital that receives county funds, the hospital's total revenues and expenses must be included in the county budget just as any other county department.

## IV.

## CONCLUSION

We affirm the trial court's declaration that the hospital can operate a home health agency. We reverse the trial court's declaration with regard to the county budget, and remand for an entry of a declaratory judgment that the county budget should include the

hospital's total non-property tax revenues and salary expenses.

Because of the mixed result, we award no costs or attorney fees on appeal.

McDEVITT, C.J., and SILAK and SCHROEDER, JJ., concur.

TROUT, Justice, concurring in Parts I and III; dissenting in part from Parts II and IV.

In Part II of its opinion, the Court concludes that the mere use of certain undefined terms in the home health statutes "shows the legislature intended that counties or county hospitals could offer home health services if they satisfy the substantive requirements." Because I do not agree that the use of these terms in a statute granting authority to the department of health and welfare is a sufficient grant of authority to the boards of county commissioners, I must respectfully dissent.

Idaho Const. art. 18, § 11 provides: "County, township, and precinct officers shall perform such duties as shall be prescribed by law." Thus, boards of county commissioners can exercise only that authority given them by the legislature. In the seminal case discussing this principle, the Court stated that "the board of county commissioners has only such powers as are expressly or impliedly conferred upon it by statute." *Prothero v. Board of Twin Falls County Comm'rs*, 22 Idaho 598, 602, 127 P. 175, 177 (1912). *See also Shillingford v. Benewah County*, 48 Idaho 447, 282 P. 864 (1929) (citing Idaho Const. art. 18, § 11).

As I read *Prothero*, counties have all authority specifically conferred upon them by statute and, in addition, all authority necessary to effectuate a specific express grant. This latter type of authority is what I believe the *Prothero* Court intended when it referred to "such powers ... impliedly conferred ... by statute." *See* I.C. § 31–828 (board of commissioners empowered to perform "all other acts ... necessary to the full discharge of the duties of the chief executive authority of the county government."). *Cf. McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (under doctrine of "implied powers," Congress may validly exercise a power that is necessary to effectuate one of the powers expressly listed in the U.S. constitution); *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985) (in agency law, "implied authority" is that which is "necessary, usual, and proper to accomplish or perform" an explicit grant of authority to an agent by a principal). Thus, the proper role of the Court in cases such as this is to first identify a specific and express grant of authority. Only then should it proceed to determine whether a particular exercise of authority is necessarily "implied" from the express grant, *i.e.,* whether the particular exercise of authority is necessary to effectuate the express grant.

In the present case, the Court correctly cites *Prothero* for the proposition that counties have certain "implied powers" in addition to those expressly enumerated by the legislature. However, it identifies no express grant of authority *to Bear Lake County* from which any "implied" authority to provide home health services can be said to arise. Rather, it determines that the legislature's use of the terms "public agencies or organizations" and "governmental unit" in referring to the types of entities the department of health and welfare is authorized to license, implies that counties are authorized to provide home health care services. In other words, the Court "implies" a grant of authority to the counties from a statute wholly unrelated to any powers expressly bestowed upon the counties. Moreover, the use of the term "governmental unit" in the home health statutes merely provides a procedure for the licensing of such entities in the event the legislature deems it appropriate to eventually authorize them to provide home health services. In my opinion, the Court's analysis is inappropriate and inconsistent with the limitations placed on the power of counties by the Idaho constitution.

In applying what I believe is the appropriate methodology, I conclude that Bear Lake County is indeed authorized to provide home health services, but only in cases involving indigents. I.C. § 31–3503 provides in relevant part:

The boards of county commissioners in their respective counties shall, under such

limitations and restrictions as are prescribed by law:

(1) Care for and maintain the medically or otherwise indigent, and may provide for the care of other sick persons as provided in section 31–3514, Idaho Code.

"Sick" is defined as any indigent person who is "affected with a disease or who is unable to care for himself ..., *but who does not necessarily require the services of a hospital.*" I.C. § 31–3502(6) (emphasis added). Implicit in the express grant of authority to provide care to indigent persons who "do not necessarily require the services of a hospital" is the authority to provide home care services to these persons. However, because I can find no express grant of statutory authority to counties relating to the provision of home care services to non-indigents, I am forced to conclude that counties lack such authority.