(May 28, 1897.)

## CONGER v. COMMISSIONERS OF LATAH COUNTY.

[48 Pac. 1064.]

COUNTY COMMISSIONERS—JURISDICTION.—County commissioners have only such jurisdiction and power as is conferred on them by law.

COUNTY NOT PARTY IN INTEREST—SECTION 1759 OF THE REVISED STAT.UTES CONSTRUED.—A county is in no sense a party in interest, as that term is used in subsection 13, section 1759 of the Revised Statutes, in a criminal case prosecuted in the name of the people or state.

EMPLOYMENT OF COUNSEL BY COMMISSIONERS—CONSTITUTIONAL CONSTRUCTION.—Under the provisions of the statute and of section 6, article 18, of the state constitution, county commissioners are not authorized to employ counsel in criminal cases.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

William H. Clagett, for Petitioner, says:

I am the real party in interest in the matter of this appeal. That the first time I learned that such appeal had been taken was on March 9, 1896, when I received by mail the brief of appellant and the transcript and too late to prepare, print and serve a brief herein within the time for serving such brief provided in the rules of this court. I therefore present this petition and ask leave of court to be permitted to argue the same, and present to this honorable court such additional points and authorities as may hereafter come to my knowledge prior to such hearing. The points and authorities submitted at this time are as follows, viz.: 1. The appeal is from the judgment. By taking this course the appellant has deprived me of the benefit of having the evidence given before the court below, and thus the court cannot consider it as a part of the record. As the actual facts, however, are useful to illustrate the points hereafter made I will briefly state them for illustrative purposes only. On April 21, 1895, the members of the board came from Moscow to Lewiston to employ me to assist the district attorney in the Williams case. The case was already set for trial on the next day, and there was no time to

look into any matter connected with the formalities of the employment. The trial was put off two days by intervening business and began on April 24th and lasted sixteen days. The board was not then in session, although expected to be so some time during the week and after the day set for the trial. I became absorbed in the case, and thought nothing more about the fee until the trial ended. I then presented my claim to the board in actual session, which ratified the contract made with me by its members. When acting in good faith within the limits of the powers conferred upon it by the constitution, the board, in a legal sense, is the county, which acts through its board, and the same rule applies to a board so acting within its power as applies to an individual. Any other rule would lead to infinite frauds upon those dealing with a public corporation. (*Gas Co. v. San Francisco,* 9 Cal. 470 et seq.; 1 Dillon on Municipal Corporations, secs. 463, 465, 547; Mechem on Agency, sec. 118.) The court has treated my claim for compensation as though this was an action brought by me against the county to enforce an alleged executory contract made with the individual members of the board only, which the board, as such, had never accepted, and which it had either repudiated, or at least had never ratified. The entire decision rests upon this erroneous assumption. I claim nothing under the agreement with the members, as such, taken by itself alone. Their action is legally important only as showing that when the board as a board subsequently accepted the benefit of the services rendered and ratified the agreement it was fully advised of all the facts. This knowledge is a necessary condition to a valid ratification. (Ewells' Evans on Agency, p. 79; 1 Parsons on Contracts, 45; *People v. Swift,* 31 Cal. 28; *Menser v. Ridson,* 36 Cal. 245.) The board had the power (the necessity existing), and no particular way of contracting by the board being prescribed by statute, its ratification was valid and bound the county, as the contract not of the members but of the board, and this contract took effect by relation from the date it was made by the individual members of the board. (*McCracken v. San Francisco,* 16 Cal. 592; *Zottman v. San Francisco,* 20 Cal. 102 et seq.; Mechem on Agency, sec. 111-116; Wharton

on Agency, 76-78, 83; *Marsh v. Fulton,* 10 Wall. 676; *High-way Commrs. v. Van Dusen,* 40 Mich. 431; Green's Brice's Ultra Vires, 549; Broom's Legal Maxims, 8th ed., 867, 868; *Cook v. Tullis,* 18 Wall. 332; *Fleckner v. Bank,* 8 Wheat. 363; *Taylor v. Robinson,* 14 Cal. 400; *Taymouth v. Keehler,* 35 Mich. 21, 25.) The evidence in the case shows that the con-tract of the members was ratified by the board. (*Clarke v. Lyon Co.,* 8 Nev. 188; Ewells' Evans on Agency, 83-85.) The question whether boards of county commissioners in this state are authorized to employ additional counsel to assist the district attorney in the prosecution of criminal cases is one of construction, and hinges upon the meaning and intent of sec-tion 6, article 18, of the constitution, which says the "county commissioners may employ counsel when necesary." One of the most important aids in arriving at the intent of a law is the obligation resting upon the court to inform itself of the previous state of the law, and the mischiefs which the statute to be construed was passed to obviate. (Sedgwick on Statu-tory and Constitutional Law, 239.)

A. J. Green, for Appellant and against the Petitioner W. H. Clagett.

There are just two points in this case, both of which were presented to this court in the brief of appelant: 1. Have county commissioners power, or authority, to employ counsel to assist district attorneys in prosecuting criminal cases? 2. Were the circumstances in this case made a matter of record by the board so as to authorize the said commissioners to bind the county? As the court in deciding this case in the March term, 1896, decided said case upon the latter point, that is, that the record of the board was not sufficient to bind the county or that the individual members could not make a con-tract binding the county, and as the respondent in his petition for rehearing has relied solely upon this one point, I will cite a few authorities and argue this point first. The board of county commissioners did not employ Clagett to prosecute the case or assist the district attorney in the case. Members of the board of county commissioners cannot make a contract that is binding on the county when said board is not in ses-

sion. (*Board of County Commrs. v. Webb*, 47 Kan. 104, 27 Pac. 825; *Hampton v. Board of County Commrs.*, 4 Idaho, 646, 43 Pac. 324.) The second point is that county commissioners have no authority or power to make a contract with an attorney for legal services when the law provides that said services shall be performed by the district attorney. (*Waters v. Trovillo*, 47 Kan. 197, 27 Pac. 822.) The county is in no sense a party in a criminal case prosecuted in the name and on behalf of the state. (*County of Modoc v. Spencer*, 103 Cal. 498, 37 Pac. 483.) It is the duty of the district atttorney to prosecute all cases of a criminal nature in the district courts of his district, and when he is absent from the court, or where he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged and for which he is to be indicted or tried, or when he is near of kin to the party to be indicted or tried on a criminal charge, or when he is unable to attend to his duties, the district court must appoint some suitable person to perform the duties of such district attorney, and must allow such compensation as the court may deem proper out of the salary of the district attorney for all services by him performed. (See 1st Sess. Laws, secs. 2, 3, p. 47; *Hampton v. Board of County Commrs.*, 4 Idaho, 646, 43 Pac. 324.) We submit that county commissioners have no power or authority under the constitution and statutes to employ counsel to assist district attorneys in criminal cases, and that in this case the order made by the said commissioners on the eleventh day of May, 1895, in which they allowed the respondent, William H. Clagett, the sum of $250 for the prosecution of L. F. Williams was illegal and not binding on said Latah county.

SULLIVAN, C. J.—As the facts of this case are quite fully stated in the former opinion, accompanying this, it is not necessary to repeat them here. The cause on rehearing has been very ably presented by counsel for the respective parties. The counsel for appellant contends: 1. That, before the board of county commissioners can bind the county in the employment of counsel, they must act as a board, and the necessity for such employment must be apparent, and that the facts creating such necessity must be made a matter of

record; 2. That the county commissioners had no jurisdiction or power to employ counsel to assist the district attorney in the prosecution of said Lafayette Williams, who was charged with the crime of embezzling $250 of the funds of the city of Moscow. Counsel for respondent contends that said board had jurisdiction and authority to employ such counsel.

As to the first contention of appellant, the court held, in the former opinion, that in the employment of counsel by the county commissioners, in order to bind the county, they must act as a board, and their action must be made a matter of record. The facts clearly show that counsel was employed by individual members of said board and no action taken by the board until after the services had been performed, and that no employment had been made by the board; and it was held, for that reason, that the board had no authority to order a warrant drawn for such services. It is urged that the board ratified the acts of its individual members by ordering a warrant to be drawn in payment of the services rendered, and some very respectable authority is cited in support of that contention.

Conceding that such ratification might be binding on the county in cases where the commissioners have jurisdiction and power to employ counsel, we will proceed to the second contention of appellant, to wit, that the board had no jurisdiction or authority to employ counsel to assist the district attorney in the prosecution of said Williams for the crime with which he was charged. Boards of county commissioners have only such jurisdiction and power as is conferred on them by law. Section 11, article 18 of the constitution, provides that the county commissioners shall perform such duties as shall be prescribed by law. Section 1759 of the Revised Statutes provides as follows: "The boards of county commissioners, in their respective counties, have jurisdiction and power under such limitations and restrictions as are provided by law," etc. Then follow twenty-two subdivisions or subsections, defining the jurisdiction and power of such boards, and it is only necessary to insert here the thirteenth subdivision, as that is the only one that authorizes the board to employ counsel, which subdivision is as follows: "To direct and control the prosecu-

tion and defense of all suits to which the county is a party in interest and employ counsel to conduct the same with or without the district attorney as they may direct." Said provisions were in force prior to the adoption of our state constitution, and prior to the admission of the state of Idaho into the Union. Section 6, article 18 of the constitution provides, *inter alia,* that "the county commissioners may employ counsel when necessary." And section 18, article 5, of the constitution, provides as follows: "A district attorney shall be elected for each judicial district by the qualified electors thereof, who shall hold office for the term of four years and perform such duties as may be prescribed by law. He shall be a practicing attorney at law and a resident and elector of the district. He shall receive as compensation for his services $2,500 per annum." At the first session of the state legislature an act was passed defining the duties of such district attorneys. (See 1st Sess. Laws 1890-91, p. 47.) Sections 2 and 3 of said act are as follows:

"Sec. 2. That section 2051 be amended to read as follows: Where there is no district attorney for the district, or where he is absent from the court, or where he has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged and for which he is to be indicted or tried, or when he is near of kin to the party to be indicted or tried on a criminal charge, or when he is unable to attend to his duties, the district court may, by an order entered in its minutes, stating the cause therefor, appoint some suitable person to perform for the time being, or for the trial of such accused person, the duties of such district attorney; and the person so appointed has all the powers of the district attorney while so acting, and he may receive such compensation as the court may allow, out of the salary of the district attorney, for all services by him performed.

"Sec. 3. That section 2052 be amended to read as follows: It is the duty of the district attorney: 1. To prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his district in which the people or the state, or any of the counties of his district, are interested or a party; and when the place of trial is changed in any such

action or proceeding to another county, he must prosecute or defend the same in such other county. 2. To give advice to the board of county commissioners and other public officers of his district, when requested in writing in all public matters in which the people or the state or counties of his district are interested, or relating to the discharge of the official duties of such boards or officers. 3. To attend, when requested by any grand jury, for the purpose of examining witnesses before them; to give them advice in any legal matter before them; to draw bills of indictment, information and accusation; to issue subpœnas and other process, requiring the attendance of witnesses. 4. On the first Monday in each month to settle with the auditors of the various counties of his district, and to pay over all money collected or received by him during the preceding month belonging to the counties of his district or state to the county treasurer of the proper county, and take his receipt therefor, and to file on the first Monday of January in each year in the office of the auditor of the proper county an account verified by his affidavit, of all money received by him during the preceding year, by virtue of his office, for fines, forfeitures, penalties and costs, specifying the name of each person from whom he receives the same, the amount received from each and the cause for which the same was paid. 5. To perform all other duties required of him by any law."

By the provisions of said section 2, in case there is no district attorney for a district, or where he is absent from the court or is under any of the disabilities therein enumerated, the district court is authorized to appoint a person for the time being to perform the duties of district attorney, and such appointee has all the powers of the district attorney, and may receive such compensation as the court may allow out of the salary of the district attorney. Section 3 makes it the duty of the district attorney to prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his district, in which the people or the state or any of the counties of his district are interested parties, and also to give advice to boards of county commissioners and other public officers of his district. The legislature has thus, under the

provisions of the constitution, defined the duties of the district attorneys, and provided a complete scheme or plan for the efficient prosecution of criminal cases, and also provided for the appointment of a prosecutor in case of absence or disability of the district attorney, and directed how such appointee shall be compensated. It is thus made the duty of the district attorney to prosecute all criminal cases, and to prosecute or defend all actions, applications or motions, in civil or criminal cases, when the people or the state or any of the counties of his district are interested parties. Some of the provisions of that section are repugnant to the provisions of said subdivision 13, section 1759 of the Revised Statutes, in that they make it the duty of the district attorney to prosecute or defend in all cases when a county of his district is an interested party, while the provisions of said subdivision 13 authorize the board to employ counsel to conduct such cases with or without the district attorney, as they may direct. If there is a conflict, as suggested, the latest expression of the legislative will must control. The provisions of subdivision .13, section 1759, were evidently intended to empower the county commissioners to protect the rights of the county in any litigation it may have, involving its property or other substantial rights. The power is in terms restricted to suits in which the county is a party in interest. The county was in no sense a party to the case of the state against Williams. That was a criminal case prosecuted on behalf and in the name of the state. The fact that the county had to pay the expenses of said criminal prosecution conferred no right on the county commissioners to employ counsel to assist in the prosecution thereof.

An examination of the constitution, and of all provisions of the statute bearing upon this subject, leads us to the conclusion that it is not intended that the county commissioners should be permitted to control or interfere with criminal prosecutions, or with the district attorney in his management thereof, or to employ counsel to assist him. The authority given by said section 6, article 18 of the constitution, to the county commissioners to employ counsel when necessary, was not intended to authorize them to employ counsel in matters

over which they had no jurisdiction or control, but simply authorizes them to employ counsel in matters within their jurisdiction and control when necessary—for example, when the district attorney could not perform such duties by reason of being absent, or when the board must decide upon some question before them before they could have time to get the advice of the district attorney. If that provision of the constitution be construed to empower the county commissioners to employ counsel in criminal cases, it empowers them to set at naught the law directing and prescribing that such duties must be performed by the district attorney. We cannot consent to such construction.

It is urged, under the provisions of said section 1759, that the county commissioners have authority to employ counsel where the county is a party interested, and that every county has an interest in the prosecution of criminals; therefore the board has authority to employ counsel in such cases when necessary. The answewr is that it was never intended, by said provision of the constitution or law, to permit the board to employ counsel in matters over which it has no jurisdiction or control, and over matters of which other officers are given exclusive control.

The conclusion reached is that the judgment of the district court must be reversed, and the cause remanded, with instructions to said court to enter judgment in accordance with the views expressed in this opinion.

HUSTON, J.—I concur in the conclusion in this case, but I am unable to agree with the majority of the court in their construction of the provision of the constitution (sec. 6, art. 18). If it was intended to restrict such employment to civil cases, the provision should have so indicated. Not having done so, I hesitate to restrict, by construction, a provision of the constitution the intent and meaning of which is, it seems to me, apparent. I doubt the correctness of the rule which would interpret the fundamental law by the light of subsequently enacted statutes.

QUARLES, J.—I concur in the conclusion reached by Chief Justice Sullivan, and accept the process of reasoning by which he reached such conclusion. The question in this case is

purely one of construction, and involves the inquiry as to what the framers of our constitution meant when they, among other things, declared in section 6, article 18, of the constitution, that "the county commissioners may employ counsel when necessary." This provision is to be construed according to the intent of the people in adopting it. The rules governing the construction of a constitution are the same as those governing the construction of a statute. In both cases we must arrive at the intention of the law-making power. If this provision was not in our constitution, but found in section 1759 of the Revised Statutes, or some other statute, no one would have the temerity to contend that it vested authority in the board of commissioners to employ counsel in any matter except where the law vested them with jurisdiction or control. While it is true that the section of the constitution cited creates the office of county commissioner, yet it is also true that the constitution does not prescribe the duties, fix the jurisdiction or name the matters over which boards of commissioners are to exercise control, but leaves these regulations to the legislature. Thus it will be seen that the legislature is charged with the duty of granting authority to, and prescribing the duties of, boards of commissioners. I am of the opinion that the people, in adopting the constitution, intended to authorize the commissioners to employ counsel in those matters only where they have jurisdiction and control, and then only when necessary. It was not intended that said provision should authorize boards of county commissioners to invade the realms of other officials, state or county, or interfere in matters, the control of which was given to other officials, but to give them power to employ counsel, when necessary, in those matters over which they have control. A grant of power to an officer who exercises limited authority by constitutional provision should not be extended by implication, but should be limited by construction to the evident intent of the people, as gathered from the entire context of the constitution, having due consideration for the conditions existing at the time of the adoption of the constitution. The rule of the strict construction does not obtain in this state, for the reason that our statutes enjoin a liberal construction.

It has been said that the county is a party in interest to criminal actions, for the reason that the county is interested in the enforcement of law and good order, and must pay the principal cost of prosecuting criminals out of its public treasury. It could be said, with as much pertinency, that the good of society demands that truth and right prevail in all cases, and that to insure such results the county commissioners should employ counsel in any civil suit that might arise between citizens of their county. If the power to "employ counsel when necessary" is not limited to matters within the control of the board, then in such civil suit the board of commissioners could employ counsel to represent either or both parties. I think that there is as much reason for saying that the board of commissioners can employ counsel to represent a private party in a civil action as there is for saying that the board of commissioners are authorized to employ counsel to assist on behalf of the state in the prosecution of a criminal case. If the excuse for the exercise of such power is based solely upon the ground that the county pays the expense of trying criminal actions, then, in the case of an indigent who is prosecuted for crime, the commissioners are also authorized to employ counsel to defend; for the county must pay the expense of this defense. The anomaly would then present itself of the county, as a party in interest, both prosecuting and defending, through its hired counsel, such indigent person—a condition which would be repugnant to every principle of law and justice. The law provides a prosecuting attorney. In case of his absence or inability to act, the law has made it the duty of the district court to appoint a person to perform the duties of such district attorney; and, in case of the indigent who is prosecuted for crime, the law has made it the duty of the district court to appoint counsel for him. The control of criminal prosecutions is vested in the public prosecutor and the district court, and county commissioners cannot, by themselves or by hired counsel, take charge or control of such prosecution, either in whole or in part. The people select their prosecuting attorneys, and it is not the province of the board of county commissioners to say that he is incompetent, and that therefore they will employ counsel to discharge his duties.